1

2

3

4

5

6

7    UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9    RYAN BLODGETT, on behalf of himself and a     Civil Action No.
class of all others similarly situated,

10
                                    Plaintiff,     **CLASS ACTION COMPLAINT**

11   v.
                                                   **DEMAND FOR JURY TRIAL**

12   FANTASIA TRADING LLC, and ANKER
INNOVATIONS,

13
                                    Defendants.

14

15

16        Plaintiff Ryan Blodgett ("Plaintiff"), individually and on behalf of himself and all

17   others similarly situated, brings this class action lawsuit against Defendants Fantasia Trading

     LLC and Anker Innovations (collectively "Anker" or "Defendants") based upon personal
18
     knowledge as to himself, the investigation of his counsel, and on information and belief as to
19
     all other matters.
20
                                  **INTRODUCTION**
21
          1.    This is a class action lawsuit against Defendants regarding the manufacture,
22
     distribution, and sale of its eufy-branded security camera products ("the "Affected Products").[1]

23   _____

     [1] The Affected Products include: eufyCam 2, eufyCam 2C, eufyCam 3, eufyCam 3C, Floodlight Camera,
24   Floodlight Cam 2k, Floodlight Cam 2 Pro, Video Doorbell 2k, Video Doorbell Duo, Solo IndoorCam C24, Solo

     CLASS ACTION COMPLAINT - 1

2.      Eufy claims that the video footage taken by the Affected Products is stored locally and encrypted on the user's device. Specifically, Defendants' marketing and advertising campaign includes the following representations:

a.  "Free & Secure local storage"

b.  "For your eyes only – All of your footage is securely stored locally. Ensuring the videos you record are for you and only you."

c.  "Storage you can trust – Military Grade AES-256 data encryption ensures your footage is kept private on transmission and storage."

d.  "Your privacy is something that we value as much as you do. To start, we're taking every step imaginable to ensure your data remains private, with you."

e.  "Your data is kept safe within your home."

f.  "[Y]our recorded footage will be kept private. Stored locally. With military-grade encryption. And transmitted to you, and only you."

g.  "We have designed controls to ensure all videos are stored securely, in your home, on your local storage . . . "

h.  "All recorded videos are encrypted from device to phone – only you have the key to decrypt and access your videos via the eufy Security app."

i.  "There is no online link available to any video."

j.  "You need to use eufy software and your account to decrypt the clips for viewing. No one else can access or read this data."

k.  "With secure local storage, your private data never leaves the safety of your home, and is accessible by you alone."[2]

Indoorcam P24, and all other similar products implementing cameras that send data to eufy's cloud servers. Plaintiff reserves the right to amend this list if further investigation and/or discovery reveals that the list should be amended.

[2] Some of these representations existed in the consumer-facing marketing and advertising meant to inform consumers, much of which has since been removed by Anker as of December 8, 2022. *See Anker's Eufy deleted these 10 privacy promises instead of answering our questions*, Sean Hollister, The Verge, Dec. 16, 2022,

CLASS ACTION COMPLAINT - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

3.       Several of these representations appear on the product and packaging label of the Affected Products, as depicted below:



https://www.theverge.com/2022/12/16/23512952/anker-eufy-delete-promises-camera-privacy-encryption-authentication

CLASS ACTION COMPLAINT - 3

4.      Defendants advertised that video and pictures would be stored locally and without fees.



5.      As a result of Defendants prominently advertising and labeling the Affected Products with "No Clouds" and local handling of data representations (the "Local Data Claims"), Plaintiff and absent Class members were led to believe that the Affected Products do not share their data with third parties.

6.      The marketing references to encryption further suggests that any local data transmissions will be securely handled and protected from outside intrusion (the "Data Safety Claims").

7.      However, a report by cybersecurity investigator Paul Moore uncovered that the Affected Products actually upload video thumbnails and facial recognition data to Defendants' cloud servers.[3] Using a simple internet browser, he was able to monitor signal transmissions from the eufy security app to cloud storage which included data such as ai-recognized facial information from people in the photos captures by the Affected Products, thumbnails from any video captured by the Affected Products, and that it was possible to stream live video from the

---

[3] *Eufy's "No clouds" cameras upload facial thumbnails to AWS,* Kevin Purdy, ARS TECHNICA, Nov. 30, 2022, https://arstechnica.com/gadgets/2022/11/eufys-no-clouds-cameras-upload-facial-thumbnails-to-aws/

CLASS ACTION COMPLAINT - 4

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Affected Products using a simple media player as a result of incredibly weak encryption.[4]

8.      Defendants' use of cloud services in the Affected Products were also confirmed by security firm SEC Consult.[5] SEC Consult found that the transmissions to the cloud servers included unencrypted traffic, making the device's username, account ID, and sent commands publicly visible.[6] SEC Consult also identified that hard-coded encryption/decryption keys common to all "Homebase" devices were made visible.[7]

9.      Accordingly, Defendants falsely represented on product packaging and in advertisements that the Affected Products stored all data locally and securely through use of military-grade encryption.

10.     Defendants omitted the following facts when selling the Affected Products to Plaintiff and absent Class members:

    a.      The Affected Products stored Plaintiff and absent Class members' data in the cloud and not locally on devices;

    b.      The Affected Products transmitted Plaintiff and absent Class members' data without encryption;

    c.      The Affected Products allow for unencrypted access to Plaintiff and absent Class members' cameras; and

    d.      The Affected Products shared Plaintiff and absent Class members' data with third parties.

11.     Plaintiff and Class members purchased the Affected Products with the expectation that the video footage taken by the Affected Products would be stored locally and

---

[4] *Id.*

[5] *The eufyCam Long-Term Observation*, SEC CONSULT, Nov. 24, 2022, https://sec-consult.com/blog/detail/the-eufycam-long-term-observation/

[6] *Id.*

[7] *See id.* Homebase devices act as a central networking hub for many of the Affected Products, the local storage place for recordings made by the Affected Products. *See S380 HomeBase (Homebase3)*, EUFY, https://us.eufy.com/products/t80301d1?_pos=1&_sid=347c51119&_ss=r (last visited Dec. 20, 2022).

CLASS ACTION COMPLAINT - 5

encrypted on their devices. Because Defendants sold the Affected Products to consumers which transmitted data to third-party cloud servers and otherwise had inadequate security measures in place, Plaintiff and the Classes were deprived of the benefit of their bargain.

12.     Prior to revelations made in November of 2022, Defendants alone knew that the Affected Products sent information to cloud servers and provided inadequate security for the Affected Products. Had Plaintiff known the information that Defendants omitted to disclose, Plaintiff would not have purchased the Affected Products, or would have paid less for them,

13.     Accordingly, Plaintiff brings this action on behalf of himself and the Class for equitable relief and to recover damages and restitution for: (i) breach of express warranty; (ii) violations of the Federal Wiretap Act, 18 U.S.C. §§ 2510-2522, (iii) violations of New York G.B.L. § 349, (iv) violations of New York G.B.L. § 350 and (v) unjust enrichment.

## PARTIES

14.     Plaintiff Ryan Blodgett is a resident and citizen of the state of Buffalo, Erie County, New York. Between 2020 and 2021, Plaintiff Blodgett purchased several of the Affected Products – *e.g.*, eufyCam2, eufyCam 2 Pro, Video Doorbell 2k, IndoorCam 2k, and Floodlight Camera from Amazon.com and Best Buy. When purchasing the Affected Products, Plaintiff Blodgett reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendants that the products would store data locally and securely.  Plaintiff Blodgett relied on these representations and warranties in deciding to purchase the Affected Products and these representations and warranties were part of the basis of the bargain in that he would not have purchased the Affected Products if he had known what Defendants omitted: that they would transmit his data to cloud servers, allow for unencrypted access to his cameras, or send unencrypted transmissions with his information to the cloud. When Plaintiff Blodgett installed the Affected Products as directed by Defendant, Plaintiff Blodgett utilized the thumbnail notification system.  If Anker remedied these problems, Plaintiff Blodgett would purchase eufy products again.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

15.     Fantasia Trading LLC is a Delaware corporation with its principal place of business located at 5350 Ontario Mills Parkway, Ontario, California.  Fantasia Trading LLC is Anker Innovation's wholly owned subsidiary.  Fantasia Trading LLC's activities are under the control and direction of its parent Anker Innovations.  At all relevant times hereto, Fantasia Trading LLC marketed, distributed, advertised, warranted, and sold the Affected Products through the United States, including in New York.

16.     Anker Innovations is a Chinese electronics manufacturer that focuses on smart devices used for entertainment, travel, and smart homes, and is centered around four key brands: Anker, Soundcore, eufy, and Nebula.[8]  Upon information and belief, Anker Innovations is headquartered in Bellevue, Washington.[9]

17.     Defendants created and/or authorized the false and misleading advertising and labeling of the Affected Products.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendant.

19.     This Court has personal jurisdiction over Defendants because Defendant Anker Innovations is headquartered in Washington, regularly conducts business in this District, and has extensive contacts with this forum.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Anker Innovations is headquartered in this District, and Defendant Anker Innovations transacts substantial business in this District.

---

[8] *About*, ANKER, https://us.anker.com/pages/about (last visited Dec. 20, 2022).

[9] *Anker Innovations LinkedIn page*,  https://www.linkedin.com/company/ankerinnovations (last visited Dec. 21, 2022).

CLASS ACTION COMPLAINT - 7

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

21.    Additionally, the eufy Terms of Use state that "Any dispute or claim relating in any way to your use of any Service will be adjudicated in the state or Federal courts in King County, Washington, and you consent to exclusive jurisdiction and venue in these courts."[10]

### FACTUAL ALLEGATIONS

**A.    Defendants Manufacture, Distribute, Market, and Sell the Affected Products**

22.    Defendants manufacture, distribute, market, and sell the eufy-branded Affected Products. The Affected Products are specifically marketed as home security camera products.

23.    Defendants engage in marketing efforts to persuade consumers on the benefits of locally storing their data. Defendants advertise and warrant that the Affected Products do not send any third party any data collected by the Affected Products and that such data is encrypted.

24.    For example, the Affected Products prominently state on their labels that the product keeps "data . . . private, with you" and that "data is kept safe within your home."

25.    Below is an image of the eufyCam 2c's product label, which states that the camera provides "secure local storage."



---

[10] *Terms of Service*, https://us.eufy.com/policies/terms-of-service?ref=footer (last accessed December 21, 2022)

CLASS ACTION COMPLAINT - 8

26.    The eufy Security Video Doorbell 2k (Wired) product label includes similar representations.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

27.     The eufy Video Doorbell 1080p (Battery-Powered) also contains similar representations.[11]



---

[11] "All of your footage is securely stored locally, ensuring the videos you record are for you and only you."

CLASS ACTION COMPLAINT - 10

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

28.    The Local Data Claims and Data Security Claims are materially the same across the Affected Products.

29.    Based on the prominent Local Data Claims and Data Security Claims included in Defendants' advertising and on the label of each Affected Product, reasonable consumers would believe that the products do not transmit the data to cloud servers and that the data would be handled securely.

**B.    Defendant's False and Misleading Advertising Campaign**

30.    Consumers looking to purchase security camera options are faced with various choices and features, including whether the security footage and data is stored locally or through cloud servers.[12]

31.    With an increasing number of data breaches and smart device hacks, there is value to security systems and monitoring systems that are designed to be inaccessible to the internet.[13]

32.    Defendants marketed and labeled their Affected Products with representations that the products would store such sensitive data locally. This differentiates the eufy-branded cameras from Defendants' competitors, like Nest (Google), which requires that all cameras be connected to Nest servers, and record and process the data, before sending it back to the user.

33.    However, as cybersecurity researchers discovered, Defendants' Affected Products uploaded captured video and images to the cloud.[14] Defendants omitted to tell consumers this important fact prior to sale.

34.    This news was first revealed on November 21, 2022 by security consultant Paul Moore, who discovered that his personal eufy products were sending face still-shots, facial

---

[12] *Here's why it's beneficial to use local storage with your security camera*, Patrick Hearn, DIGITALTRENDS, Mar. 27, 2021, https://www.digitaltrends.com/home/home-security-camera-local-storage-benefits/

[13] *Id.*

[14] *Eufy caught lying about local-only security cameras with footage sent to cloud, accessible in unencrypted streams [U]*, Ben Schoon, 9TO5GOOGLE, Dec. 1, 2022 https://9to5google.com/2022/12/01/eufy-camera-cloud-security-leak/

CLASS ACTION COMPLAINT - 11

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

recognition data, and thumbnails from video captured by his products to cloud servers.[15] Mr. Moore later discovered that live video feeds from his eufy products were accessible through a simple media player.[16] Until Mr. Moore's revelation, Defendants had exclusive knowledge as to how the Affected Products operated and omitted to tell consumers this important fact prior to sale.

35.    On November 24, 2022, security consulting firm SEC Consult announced the publication of a two-year-long study of eufy's security products, which noted many of the same cloud-server interactions and the unencrypted transmission of sensitive data during those interactions.[17]

36.    In response to these initial reports, Anker explained that the images were created and sent to cloud servers hosted by Amazon Web Services to create the preview images used in "thumbnail-based notifications" sent to users when their devices triggered.[18] During the set-up process, eufy's users are allowed "to choose between text-based or thumbnail-based push notifications[.]"[19] Anker added that "it was note made clear [to users] that choosing thumbnail-based notifications would require preview images to be briefly hosted in the cloud."[20]

37.    Technology publications such as The Verge reached out to Anker for further comment. The Verge was specifically told by Brett White, a senior PR manager at Anker, that "[He] can confirm that it is not possible to start a stream and watch live footage using a third-

---

[15] *Id.*

[16] *Id.*

[17] *The eufyCam Long-Term Observation*, SEC Consult, Nov. 24, 2022 https://sec-consult.com/blog/detail/the-eufycam-long-term-observation/

[18] *Anker's Eufy Cameras Caught Uploading Content to the Cloud Without User Consent [Updated]*, MACRUMORS, https://www.macrumors.com/2022/11/29/eufy-camera-cloud-uploads-no-user-consent/ (last visited Dec. 20, 2022).

[19] *Id.*

[20] *Id.*

CLASS ACTION COMPLAINT - 12

party player such as VLC."[21] However, The Verge was able to disprove Mr. White's assertion after "repeatedly watch[ing] live footage from two of our own eufy cameras using that very same VLC media player, from across the United States – proving that Anker has a way to bypass encryption and access these supposedly secure cameras through the cloud."[22]

38.      As a result of its cloud usage becoming public knowledge, Anker announced it would revise the language provided to users when choosing between text- and thumbnail-based notifications and that it would be more clear about the use of cloud for push notifications "in [its] consumer-facing marketing materials."[23]

39.      On December 19, 2022, Defendants issued a statement acknowledging that Affected Products use the cloud to send push notifications.[24]

40.      Defendants, in effect, recognized that their advertising, marketing and labeling of the Affected Products were false and misleading or, at a very minimum, omitted information regarding the privacy of the information recorded by the Affected Products.

41.      In addition, cloud access to live video streams is unrelated to the thumbnail-based notification system, and instead relies on eufy server URLs. Wasabi, one of the twitter accounts to reveal the live-stream security vulnerability, worked with ArsTechnica and The Verge to show how camera-feed URLs "appear to be a relatively simple scheme involving the camera serial number in Base64, a Unix timestamp, a token that the Verge says is not validated

---

[21] *Anker's Eufy lied to us about the security of its security cameras*, Sean Hollister, THE VERGE, Nov. 30, 2022 https://www.theverge.com/2022/11/30/23486753/anker-eufy-security-camera-cloud-private-encryption-authentication-storage

[22] *Id.*

[23] *Anker's Eufy Cameras Caught Uploading Content to the Cloud Without User Consent [Updated]*, MACRUMORS, https://www.macrumors.com/2022/11/29/eufy-camera-cloud-uploads-no-user-consent/ (last visited Dec. 20, 2022).

[24] *To our eufy Security Customers and Partners*, https://community.security.eufy.com/t/to-our-eufy-security-customers-and-partners/3568215 (last accessed Dec. 21, 2022).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

by eufy's servers, and a four digit hex value."[25] According to Wasabi, "the way the remote URLs are configured, there are only 65,535 combinations to try, 'which a computer can run through pretty quick.'"[26]

42.    In their recent statement, Defendants admit that "eufy Security 's Live View Feature on its Web-Portal Feature Has a Security Flaw."[27] However, they state that "no user data has been exposed, and the potential security flaws discussed online are speculative." But this has been disproven, and as a result of working with Wasabi through the live-stream vulnerability, ArsTechnica and The Verge were able to replicate the live-stream vulnerability in their own "Eufy camera systems from outside their network without authentication or other Eufy devices on that system."[28]

## C.    Consumers Have Been Harmed By Defendants' False and Misleading Representations

43.    Defendants knew, or should have known, that the advertising and labeling claims made on the Affected Products are false and misleading.

44.    Defendants knew, or should have known that the advertising for the Affected Products misrepresented material facts concerning "local storage" and the secure nature of the data.

45.    Defendants knew, or should have known that the representations and statements made through its labeling and advertising would provide users with a false sense of security and mislead them as to who would be able to access their data.

46.    Had Defendants not omitted the true nature of Affected Devices' data security, Plaintiff would not have purchased the Affected Products, or would have paid less for them,

---

[25] *Eufy's "local storage" cameras can be streamed from anywhere, unencrypted*, Kevin Purdy, ARSTECHNICA, Dec. 1, 2022, https://arstechnica.com/gadgets/2022/12/more-eufy-camera-flaws-found-including-remote-unencrypted-feed-viewing/

[26] *Id.*

[27] *Id.*

[28] *Id.*

CLASS ACTION COMPLAINT - 14

had the Affected Products been truthfully and accurately labeled.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendant's Affected Products in the United States for personal/household use within any applicable limitations period (the "Nationwide Class").

48.     Plaintiff brings this action individually and on behalf of the following New York subclass:

> All persons who purchased one or more of Defendant's Affected Products in the state of New York for personal/household use within any applicable limitations (the "New York Subclass").

49.     Excluded from the Class and Subclass are: (1) any Judge or Magistrate presiding over this action and any members of their families; and (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entities in which Defendants or their parents and any entities in which Defendants have a controlling interest and their current or former employees, officers, and directors

50.     Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiff, but joinder of individual members herein is impractical. The Class is likely comprised of thousands of consumers. The precise number of Class members, and their addresses, is unknown to Plaintiff at this time, but can be ascertained from Defendants' records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

51.     Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, but are not

CLASS ACTION COMPLAINT - 15

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

limited to, the following:

    a.  Whether the marketing, advertising, packing, and labeling for the Affected Products was false, misleading, and/or deceptive;

    b.  Whether Defendants warranted that the data collected by the Affected Products would be stored locally and would be encrypted;

    c.  Whether Defendants breached its express warranties;

    d.  Whether Defendants violated the state consumer protection statutes alleged herein;

    e.  Whether Defendants were unjustly enriched; and

    f.  The nature of relief, including damages and equitable relief, to which Plaintiff and members of the Class are entitled.

52.    Typicality of Claims (Rule 23(a)(3)): Plaintiff's claims are typical of the claims of the Class because Plaintiff, like all other Class Members, purchased the Affected Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

53.    Adequacy of Representation (Rule 23(a)(4)): Plaintiff adequately represents the Class because his interests do not conflict with the interests of the members of the Class, and he has retained counsel competent and experienced in complex class action and consumer litigation. Plaintiff and his counsel will fairly and adequately protect the interest of the members of the Class.

54.    Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendants because the damages suffered by Plaintiff and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient

CLASS ACTION COMPLAINT - 16

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

55.     Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for the Defendants; or the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
**(On behalf of Plaintiff and the Class (or alternatively, the New York Subclass) against Defendant)**

56.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

57.     Defendants marketed and sold the Affected Products in the stream of commerce with the intent that the Affected Products would be purchased by Plaintiff and the Classes.

58.     In connection with the sale of the Affected Products, Defendants, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Affected Products adhered to the Local Data and Data Security Claims. These were affirmations of fact about the products (i.e., a description of the effects) and a promise relating to the goods.

CLASS ACTION COMPLAINT - 17

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

59.     In fact, the Affected Products do not conform to the above referenced representations because, as alleged in detail above, they transmit data to cloud servers and use weak or non-existent encryption to transmit or otherwise secure that data. Thus, the express warranties were breached.

60.     As a direct and proximate cause of Defendants' breach of express warranties, Plaintiff and the Class members have been injured and harmed because (a) they would not have purchased the Affected Products on the same terms, if at all, if they knew that the Affected Products shared data with cloud servers and lacked adequate data security; and (b) the Affected Products do not have the characteristics, uses, benefits, or qualities as promised.

61.     On December 21, 2022, prior to filing this action, Plaintiff served Defendants with a pre-suit notice letter pursuant to U.C.C. § 2-607.

## COUNT II
### VIOLATION OF THE FEDERAL WIRETAP ACT
### 18 U.S.C. §§ 2510-2522, *et seq.*
### (on behalf of Plaintiff and the Class)

62.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

63.     The Electronic Communications Privacy Act of 1986 amended the Federal Wiretap Act so that it would prohibit the intentional interception of the contents of any wire, oral, or electronic communication through the use of a device.

64.     The Federal Wiretap Act protects both the sending and receipt of communications.

65.     Any person whose wire, oral or electronic communication is intercepted has a private right of action under 18 U.S.C. § 2520(a).

66.     Through its advertising, labeling, marketing, and packaging, Defendants represented that the Affected Products stored all data locally and securely through use of military-grade encryptions. Contrary to any claims of exclusive local data handling, the

CLASS ACTION COMPLAINT - 18

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Affected Products sent users' data to Defendants' servers contemporaneous with the transmission to users' devices.

67.     The communications intercepted by Defendants included images associated with the communications made between the Affected Products and Plaintiff and other Class members, as well as facial recognition information.

68.     The personal data, which Defendants transmitted without Plaintiff's and Class members' authorization and/or consent included video footage which Plaintiff reasonably expected to be confidential and safely and locally secured. Plaintiff and Class members had a legally protected informational privacy interest in the personal and sensitive information as well as an autonomy privacy interest in conducting their personal activities without observation, intrusion, or interference.

69.     The transmission of data between the Class members' smart phones and their Camera Products were "transfer[s] of signs, signals, writing, . . . data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce[,]" and were therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

70.     The Affected Products, Class members' smart phones, Anker's server, and the code used by Anker to direct communications to their servers are "devices" within the meaning of 18 U.S.C. § 2510(5).

71.     Plaintiff and Class members were not aware that Defendants redirected their data for Defendants' thumbnail notification system. Nor did Plaintiff and Class members authorize Defendants to redirect their data for the thumbnail notification system.

72.     As a result of Defendants' actions, Plaintiff and Class members have been damaged as a direct and proximate result of Defendants' interception and redirection of their electronic communications, and are entitled to just compensation.

73.     Pursuant to 18 U.S.C. § 2520, Defendants' actions empower the Court to assess

CLASS ACTION COMPLAINT - 19

statutory damages to Plaintiff and the Class members, injunctive and declaratory relief, punitive damages, reasonable attorneys' fees, and other litigation costs.

## COUNT III
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349
### (on behalf of Plaintiff Blodgett and the New York Subclass)

74.      Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

75.      Plaintiff brings this cause of action on behalf of himself and members of the New York Subclass.

76.      New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

77.      In its sale of goods throughout the State of New York, Defendants conduct business and trade within the meaning and intention of New York's General Business Law § 349.

78.      Plaintiff and members of the New York Subclass are consumers who purchased the Affected Products from Defendants for their personal use.

79.      By the acts and conduct alleged herein, Defendants engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, failing to disclose that the Affected Products were designed or operated in such a way that they shared user data with cloud servers over unencrypted or weakly encrypted transmissions.

80.      Defendants concealed and/or omitted material facts regarding the true nature of the Affected Products.

81.      Defendants falsely represented on product packaging and in advertisements that the Affected Products stored all data locally and securely through use of military-grade encryption.

82.      Defendants prominently labeled the Affected Products with representations touting local storage, secure storage and/or how data never leaves the safety of customers'

CLASS ACTION COMPLAINT - 20

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

homes. This, as detailed above, turned out to be untrue.

83.    The foregoing deceptive acts and practices were directed at consumers.

84.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Affected Products to induce consumers to purchase the same.

85.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

86.    Defendants possessed information about the Affected Products' use of cloud services and inadequate encryption protocols, which were relevant to Plaintiff and New York Subclass members, but failed to disclose this information.

87.    By reason of this conduct, Defendants engaged in deceptive conduct in violation of New York's General Business Law.

88.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the New York Subclass have sustained from having paid for Defendants' Affected Products.

89.    As a result of Defendant's violations, Plaintiff and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Affected Products on the same terms, if at all, if they knew that the Affected Products shared data with cloud servers and lacked adequate data security; and (b) the Affected Products do not have the characteristics, uses, benefits, or qualities as promised.

90.    Plaintiff brings this action on behalf of himself and other members of the New York Subclass. Plaintiff and members of the New York Subclass are therefore entitled to: (a) an order requiring Defendants to cease the use of prohibited practices alleged herein; (b) full restitution of all monies paid to Defendants as a result of its deceptive practices or fifty dollars, whichever is greater, per violation, three times actual damages; and (d) the payment of Plaintiff's attorneys' fees and costs.

CLASS ACTION COMPLAINT - 21

## COUNT IV

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350
### (on behalf of Plaintiff Blodgett and the New York Subclass)

91.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

92.    Plaintiff brings this count on behalf of himself and all members of the New York Subclass that purchased an Affected Product.

93.    New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

94.    Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

95.    Defendants falsely represented on product packaging and in advertisements that the Affected Products stored all data locally and securely through use of military-grade encryption.

96.    Defendants prominently labeled the Affected Products with representations touting local storage, secure storage and/or how data never leaves the safety of customers' homes. This, as detailed above, turned out to be untrue as the Affected Products were designed or operated in such a way that they shared user data with cloud servers over unencrypted or weakly encrypted transmissions.

97.    Based on the foregoing, Defendants engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

98.    Defendants' false, misleading, and deceptive representations and omissions of fact about the Affected Products were and are directed towards consumers.

99.    Defendants' false, misleading, and deceptive representations and omissions were material and are likely to mislead a reasonable consumer acting reasonably under the customary or usual circumstances.

CLASS ACTION COMPLAINT - 22

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

100.    Defendants' false, misleading, and deceptive representations and omissions have resulted in consumer injury or harm to the public interest.

101.    As a result of Defendants' false, misleading, and deceptive statements and representations of fact, and omissions, Plaintiff and the New York Subclass have suffered and continue to suffer economic injury.

102.    As a result of Defendants' violations, Plaintiff and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Affected Products on the same terms, if at all, if they knew that the Affected Products shared data to the cloud and lacked adequate security; and (b) the Affected Products do not have the characteristics, uses, benefits, or qualities as promised.

103.    On behalf of himself and other members of the New York Subclass, Plaintiff seeks to recover actual damages or five hundred dollars, whichever is greater for each violation, three times actual damages, and reasonable attorneys' fees.

## COUNT V
### UNJUST ENRICHMENT
### On behalf of the Plaintiff and the Class against Defendant)

104.    Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

105.    Plaintiff and Class members conferred benefits upon Defendants. Plaintiff and Class members paid money for Defendants' Affected Products that they would not have purchased or would not have purchased on the same terms, had they known that the Affected Products shared data with cloud servers and lacked adequate data security.

106.    Defendants has unjustly retained the benefits conferred upon by Plaintiff and Class members.

107.    Defendants retained those benefits under circumstances that make it inequitable for Defendants to retain such benefits. Specifically, Defendants retained those benefits even

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

though Defendants' Affected Products shared data with cloud servers and lacked adequate data security. If Plaintiff and Class members had known the true nature of Defendants' Affected Products, they would not have purchased the products. Plaintiff and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

108.    Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the proposed Classes, pray for relief and judgment against Defendants as follows:

a.    Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as the representative of the Class, and designating Plaintiff's counsel as Class Counsel;

b.    Awarding Plaintiff and the Classes compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

c.    Awarding Plaintiff and the Classes appropriate relief, including but not limited to actual damages;

d.    For declaratory and equitable relief, including restitution and disgorgement;

e.    For an order enjoining Defendants from continuing to engage in the wrongful acts and practices alleged herein;

f.    Awarding Plaintiff and the Classes the costs of prosecuting this action, including expert witness fees;

g.    Awarding Plaintiff and the Classes reasonable attorneys' fees and costs as allowable by law;

h.    Awarding pre-judgment and post-judgment interest;

i.    For punitive damages; and

CLASS ACTION COMPLAINT - 24

1

j.        Granting any other relief as this Court may deem just and proper.

2

### JURY TRIAL DEMANDED

3

Plaintiff hereby demands a trial by jury of all claims so triable.

4

Dated: December 22, 2022            **TOUSLEY BRAIN STEPHENS PLLC**

5

**By:** *s/ Kim D. Stephens*
6
Kim D. Stephens, WSBA #11984
**By:** *s/ Jason T. Dennett*
7
Jason T. Dennett, WSBA #30686
**By:** *s/ Rebecca L. Solomon*
8
Rebecca L. Solomon, WSBA #51520
1200 Fifth Avenue, Suite 1700
9
Seattle, WA 98101
Telephone: (206) 682-5600
10
Facsimile: (206) 682-2992
Email: kstephens@tousley.com
11
Email: jdennett@tousley.com
Email: rsolomon@tousley.com
12

**LEVI & KORSINSKY, LLP**
13

Mark S. Reich*
14
Courtney E. Maccarone*
Gary I. Ishimoto*
15
55 Broadway, 10th Floor
New York, NY 10006
16
Telephone: 212-363-7500
Facsimile: 212-363-7171
17
Email: mreich@zlk.com
Email: cmaccarone@zlk.com
18
Email: gishimoto@zlk.com

19
*Counsel for Plaintiff*

20
*\*pro hac* vice to be filed

21

22

23

24

CLASS ACTION COMPLAINT - 25